# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

RONALD DARBY                                                                     PLAINTIFF

V.                                               **CIVIL ACTION NO. 3:11-CV-646-S**

GORDON FOOD SERVICE, INC.                                       DEFENDANT

## MEMORANDUM OPINION

The plaintiff has filed a motion to compel discovery of certain documents withheld by Gordon Food Service, Inc. ("GFS") on the basis of attorney-client privilege and the work product doctrine. After reviewing the contested documents *in camera* and considering the arguments presented in the motion and all responses thereto, the court concludes that the assertions of privilege were appropriate with respect to some, but not all, of the documents and will therefore grant in part and deny in part Mr. Darby's motion to compel.

**I.**

In December 2009, Mr. Darby, who was then employed as a mechanic by GFS, sustained a work-related injury. He promptly notified GFS of the injury and filed a claim for workman's compensation benefits and, one year later, hired a lawyer to represent him. Approximately four months after that, GFS sent Mr. Darby a letter notifying him that his employment was terminated because could not meet the lifting requirements of his job. A few months after that, Mr. Darby filed this lawsuit in which he principally alleges that GFS retaliated against him for filing a workman's compensation claim.

GFS self-insures its workman's compensation coverage, but for several years it has retained a company called Specialty Risk services ("SRS"), and later called Sedgwick, to investigate and assist GFS with the resolution of those claims. SRS, in turn, contracted with a

company called Coventry Workers' Comp Services, which retained nurses who serve a dual role. Coventry nurses accompany claimants to their medical appointments and help explain the diagnoses and recommended treatment. They also report regularly to SRS about the claimant's evaluations, medical status, and prognosis.

During the course of discovery, GFS withheld several documents chiefly on the basis of the attorney-client privilege and, with respect to a few of the documents, on the basis of the work product doctrine. Other than the type of privilege asserted, the withheld documents fall generally into two broad categories: (1) communications among GFS employees (almost exclusively among members of the Human Resources department), SRS consultants, and the Coventry nurse manager assigned to Mr. Darby's claim; and (2) communications between GFS employees and the company's outside counsel.

There exists a corresponding temporal division of the documents, as well. Although the dates of the withheld documents range from January 2010 to April 2012, with the vast majority dated sometime during 2010, there are no documents containing communications between any GFS, SRS, or Coventry employee and either retained counsel or an in-house attorney identified as such until February 8, 2011 (Document 90). From that date on, however, it is clear that GFS retained outside counsel to assist it in negotiations with Mr. Darby's lawyer, who began communicating with GFS about Mr. Darby's claim in December 2010. Nevertheless, most of the documents withheld on the basis of the attorney-client privilege involve no communications with an attorney (or a representative of an attorney). This factor is central to much of the analysis below

**II.**

Because this is a diversity case, the court must consult federal law to resolve contested assertions of attorney work product claims and consult state law to resolve claims of privilege. *See* Fed. R. Evid. 501; *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009).

**A. The Documents Withheld on the Basis of the Work Product Doctrine.**

The work product doctrine, as delineated by Federal Rule of Civil Procedure 26(b)(3) "protects (1) documents and tangible things; (2) prepared in anticipation of litigation or for trial; (3) by or for another party or its representative." *In re Professionals Direct*, 578 F.3d at 438 (internal citation omitted). To determine whether a document has been prepared "in anticipation of litigation," and therefore potentially contains attorney work product, this court must ask two questions: (1) whether that document was prepared "because of" a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable. *Id.* at 439. The party claiming protection carries the burden of showing that anticipated litigation was the driving force behind the preparation of each requested document. *Id.* (internal citations omitted).

**1. Whether the Work Product Doctrine Is Applicable to Certain Documents.**

GFS withheld relatively few documents on the basis of the attorney work product doctrine. They are documents 11, 17-18, 28-29, 45, 90, 93, and 98-108. Documents 90, 93, and 107, which were also withheld on the basis of the attorney-client privilege, need not be produced. They are all communications between GFS personnel and their outside counsel, or among GFS, SRS/Sedgwick, and Coventry personnel in response to questions or requests from the attorneys GFS hired to defend GFS after Mr. Darby had retained counsel. As such they are indeed work product, in addition to being attorney-client communications.

Documents 11, 17-18, 28-29 and 45[1] are not work product. They all pertain to communications from Tracy Tolson, the Coventry nurse manager who was assigned to Mr. Darby's claim and who accompanied him on occasion to his medical appointments and then reported back to SRS or GFS's Human Resources Department regarding his status and remaining physical limitations. As subsequent documents[2] and deposition testimony establish, however, Mr. Darby had not retained counsel at the time these Tolson documents were generated, and there is no indication that Mr. Darby had then threatened litigation. Rather, he had simply filed a workers' compensation claim, which GFS's Human Resources Department was processing. Indeed, the point person with the Human Resources Department described this initial activity as "administrative."[3]

This situation is similar to the one in *In re Professionals Direct*, in which a malpractice insurer "retained outside counsel to advise it on potential defenses to coverage and to explore the possibility of seeking declaratory judgment that [its insured] was not covered by the plan." 578 F.3d at 435-6. In that matter, the insured had not yet filed or threatened litigation, but when litigation happened, Professionals Direct withheld several documents from that time period on the basis of the work product doctrine and argued, in part, that they reasonably anticipated

---

[1] These documents were also withheld on the basis of the attorney-client privilege, but do not involve communications with any of GFS's lawyers. The court will separately evaluate, *infra*, whether that privilege protects these documents from discovery.

[2] *Compare* Documents 25 and 79, which are status reports from SRS to GFS that were submitted on May 7, 2010, and December 17, 2010, which collectively post-date Documents 11, 17-18, 28-29 and 45, and which include nothing in the spaces reserved for plaintiff's attorney and defense attorney, with Document 95, which is a June 2011 status report from SRS to GFS that is identical in format and identifies by name in the appropriate spaces the attorneys for both Mr. Darby and GFS. *See also* deposition testimony of Kristin Potter, the GFS Human Resources employee chiefly responsible for the processing and administration of Mr. Darby's claim, in which she states that she was not informed that Mr. Darby retained counsel until December 2010 (Docket No. 34-5), and Documents 83-85, which contain the first mention of Mr. Darby's counsel, and Document 90, which contains the first withheld email between GFS and its outside counsel.

[3] *See* Dep. Of K. Potter (docket no. 34-5) at 14.

4

litigation—their own declaratory judgment action, if not a breach of coverage suit by their insured. The Sixth Circuit stated:

> In essence, its position is that the documents prepared by its attorneys while having "dual function" necessarily have a dual *purpose* and are thus immune from discovery. But that does not follow. The fact that Professionals Direct reasonably anticipated litigation at this point does not answer whether it prepared *the disputed documents* "because of" litigation or not. Making coverage decisions is part of the ordinary business of insurance and if the "driving force" behind the preparation of these documents was to assist Professionals Direct in deciding coverage, then they are not protected by the work-product doctrine.

*Id.* at 439. Thus, the theoretical anticipation of litigation does not transform every subsequent document into work product. Here GFS self-insured its workers compensation coverage. Gathering information about and processing those claims was part of the ordinary business of its Human Resources Department and, as its own representative tacitly conceded, was the "driving force" behind the preparation of 11, 17-18, 28-29 and 45. Although it might be reasonable to expect litigation may result from all workers compensation claims, these documents were not prepared "because of" litigation and are therefore not protected from discovery on the basis of the work product doctrine.

Documents 98-108, and 114, however, were prepared in late 2011, well after both Mr. Darby and GFS had retained counsel. They involve communications necessary to provide GFS's counsel with information they requested or needed and were clearly prepared "because of" anticipated litigation. They are therefore protected from discovery on the basis of the work product doctrine.

### 2. Whether Disclosure is Nevertheless Permissible

The prohibition against disclosure of an attorney's work product may be overcome, if the party requesting the material shows "it has substantial need for the materials to prepare its case

5

and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(II). Mr. Darby has not met his burden of establishing that he cannot prepare his case without undue hardship unless he obtains these documents. The eleven documents to which the work product doctrine applies are communications among a very limited number of persons at GFS. These persons may be deposed (at additional cost certainly), but they are not so great in number that the additional cost surpasses the normally high expenses associated with litigation generally and rises to the level of undue hardship.

### B. The Documents Withheld on the Basis of the Attorney-Client Privilege

The attorney-client privilege protects from disclosure "confidential communication[s] made for the purpose of facilitating the rendition of professional legal services," Ky. R. Evid. 503(b), and, unlike the work product doctrine, "is not contingent on actual or threatened litigation," *Collins v. Braden*, 384 S.W.3d 154, 160 (Ky. 2012). When it is applicable, it is impregnable. *Id.* The threshold question for this court is whether it applies to any of the documents at issue in this matter.

As a preliminary matter, only a few of the documents withheld on the basis of the attorney-client privilege involve communications between counsel for GFS and employees of GFS, SRS/Sedgewick, or Coventry. Most are communications between and among representatives of those three companies, and involve no attorneys (attorney representatives, *e.g.*, paralegals) identified as such. That absence of an attorney is not dispositive, however, because pursuant to Kentucky's broad Rule of Evidence 503(b)(4), the communications need not directly include any attorney to be privileged. So, the fact that the vast majority of the documents GFS withheld on the basis of the attorney-client privilege were communications among GFS,

6

SRS/Sedgewick, and Coventry, does not preclude the application of the privilege. The analysis does not end there, however.

Kentucky Rule of Evidence 503 states, in relevant part and with emphasis added:

> (a) Definitions. As used in this rule: …
>   (2) "Representative of the client" means: …
>     (B) Any employee or representative of the client who makes or receives a confidential communication:
>       (i) In the course and scope of his or her employment;
>       (ii) Concerning the subject matter of his or her employment; and
>       (iii) *To effectuate legal representation for the client*….
>   (5) A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure *is made in furtherance of the rendition of professional legal services to the client* or those reasonably necessary for the transmission of the communication.
> (b) General rule of privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication *made for the purpose of facilitating the rendition of professional legal services to the client:* …
>   (4) Between representatives of the client or between the client and a representative of the client; …

Thus, two additional requirements to establish the privilege apply in every case. First, the statements must actually be confidential, meaning they are "not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." KRE 503(a)(5). Second, the statements must be made for the purpose of obtaining or furthering the rendition of legal services to the client. KRE 503(b)." *Collins v. Braden*, 384 S.W.3d 154, 161 (Ky. 2012).

Some of the documents withheld clearly were made for the purpose of obtaining or furthering the rendition of legal services to the client, and were made by persons acting within the scope of their employment concerning the subject matter of their employment. Those are

7

Documents 83-95, 107, and 109-113, which are clearly covered by Kentucky's attorney-client privilege and need not be produced. Many of these also involve communications with GFS's outside counsel, too.

The remaining documents (Documents 1-16, 18-27, 29-35, 36-44, 46-82) require more detailed analysis. All are email communications among GFS, SRS/Sedgwick, and Conventry employees, except Documents 25-27 and 79-81, which are memoranda from SRS to GFS entitled "Workers' Compensation Status Report and File Strategy." All were created before GFS became aware that Mr. Darby had retained counsel and before GFS retained counsel. This court must therefore determine how far the boundaries of "to effectuate legal representation for the client," Ky. R. Evid. 503(a)(2)(B)(iii)(definition of client); "made in furtherance of the rendition of professional legal services to the client," Ky. R. Evid. 503(a)(5)(definition of confidential); and "made for the purpose of facilitating the rendition of professional legal services to the client," Ky. R. Evid. 503(b)(statement of the general rule of the privilege) stretch. This is a close question.

All of these emails were generated before Mr. Darby hired a lawyer or filed suit. Accordingly, they do not appear, using a temporal analysis, to have been made for the purpose of effectuating, rendering, or facilitating the rendition of, legal services for GFS. But, the Kentucky Supreme Court recently clarified that "[t]he attorney-client privilege is not contingent on actual or threatened litigation," *Collins*, 384 S.W.3d at 160, which would suggest that a distinction based solely on when GFS knew Mr. Darby was represented by counsel, is in appropriate.

The Kentucky Supreme Court also has stated that the attorney-client privilege will only attach to communications "made for the purpose of *obtaining* or furthering the rendition of legal services to the client," however, and does not apply to business advice, even if that advice comes

8

from a lawyer. *Id.* at 160, 161. And, in *Lexington Public Library v. Clark*, 90 S.W.3d 53, 59 (Ky. 2002), the court noted: "Whether a particular communication is privileged depends (absent waiver) not on what use was ultimately made of the communication, but on the facts and circumstances under which the communication was made." These guidelines suggest that some purely temporal distinction can be determinative in this matter.

GFS argues that it retained SRS/Sedgewick and SRS retained Coventry to assist GFS – at least in part – with its litigation and settlement strategies regarding each workers' compensation claims. While SRS's memoranda include a paragraph entitled "Disposition Plan (this would include Recovery, Litigation Strategy, and Settlement)," GFS has not established that anyone it communicated with at SRS was a lawyer, or was providing legal advice to GFS under the supervision and at the request of an attorney. Moreover, the email communications pertain almost exclusively to medical status updates, as do the memoranda submitted to GFS by SRS, disposition plan notwithstanding. In the memoranda, there is some calculation of the Mr. Darby's medical expenses and a discussion of the appropriate amount of reserves to set, but the court therefore finds it difficult to characterize all of the communications, including the memoranda, as being "made for the purpose of obtaining or furthering legal services." *Collins*, 384 S.W.3d at 161. They all appear to be more akin to business advice, particularly in light of the testimony of Kristin Potter, the GFS point person for the claim and the person to whom the memoranda were addressed. *See generally* docket no. 34-5. She characterized her actions regarding the processing of Mr. Darby's claim to be "administrative," typical processing actions, before he retained counsel. *Id.* at 14.

The burden of proving these initial communications are privileged "falls solely" on GFS. *Id.* Based on the record presented, GFS has not met that burden. It has not argued, much less

shown, that any of the identified participants in the communications were attorneys, or that it retained outside counsel prior to Mr. Darby's decision to hire an attorney. Nor has it established that it was GFS's policy always to have its handling of workers' compensation claims reviewed by counsel prior to making any offer of settlement or work accommodations to claimants, regardless of whether the claimant had retained counsel.

The court acknowledges and agrees that:

> The protection from disclosure of privileged communications between an attorney and client is one of the foundation principles of Anglo–American jurisprudence. Where the privilege applies its breach undermines confidence in the judicial system and harms the administration of justice.

*St. Luke Hospitals, Inc. v. Kopowski*, 160 S.W.3d 771, 775 (Ky. 2005). It cannot conclude, however, that Kentucky's attorney-client privilege would apply to business-as-usual processing of a workers' compensation claim by a company that self-insures for such claims. The foundation of the privilege is to encourage frank and unfettered communication regarding legal advice. The facts and circumstances under which these communications were made, and the information contained in the emails and memoranda, are much more akin to business communications rather than "disclosures necessary to obtain legal advice which might not have been made absent the privilege." Accordingly, the court concludes that Documents 1-16, 18-27, 29-35, 36-44, and 46-82 are not protected from discovery by the attorney client privilege.

### III.

This court treads lightly when it comes to questions of privilege, particularly given the important policy considerations underlying both the attorney-client privilege and the work product doctrine. Nevertheless, those underlying considerations are not well served if strategic-minded clients are permitted to broadly withhold pre-trial communications and documents

10

simply because they pertain to a matter that *could* result in litigation or where, as here, they retained an outside company whose duties consisted (in part) of helping develop so-called litigation strategy even where litigation had not commenced or as yet become demonstrably likely. The label "litigation strategy" is not an incantation that automatically conjures up privilege. The court must evaluate the substance of each communication or document and not stop its analysis at the label. Accordingly, this court will enter an order granting in part and denying in part Mr. Darby's motion to compel.

    DATE:

cc: counsel of record