UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

RONALD DARBY, Plaintiff,

v. Civil Action No. 3:11-cv-00646-DJH

GORDON FOOD SERVICES, INC., Defendant.

\* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Defendant Gordon Food Services, Inc. ("GFS") terminated Plaintiff Ronald Darby from his position as a heavy truck fleet mechanic nearly a year after he was injured on the job. Darby claims that he was terminated in retaliation for pursuing a workers' compensation claim, and that his termination violated the Kentucky Civil Rights Act. He also claims that the termination violated an implied covenant of reasonableness and fair dealing. GFS requests summary judgment on all of Darby's claims. (Docket Nos. 50, 54, 59) Because there are genuine disputes of material fact as to whether GFS's termination of Darby was substantially motivated by his pursuit of a workers' compensation claim and whether he is disabled, the Court will deny GFS's request for summary judgment on those claims. The Court will grant summary judgment for GFS on Darby's claim that the termination of his employment violated an implied covenant.

### I.  FACTUAL BACKGROUND

Darby began working as a fleet mechanic for GFS in April 2006. As a fleet mechanic, Darby was required to lift and carry heavy material and perform manual labor. On January 4, 2010, Darby injured his left shoulder while using a sledgehammer at work and began a subsequent leave of absence. Darby had surgery on his shoulder in March 2010, followed by surgery on his elbow in August 2010. Darby did not return to work for the remainder of the

year. GFS paid workers' compensation benefits to Darby throughout his absence and paid for the medical treatment for his injury. (D.N. 50-1, PageID # 315)

In late December 2010, GFS learned of Darby's work restrictions. The physician who operated on Darby's shoulder issued permanent work restrictions, stating that Darby is able "to function in the medium physical examination category, with some ability to work in heavy physical demand level, but there are particular limitations, including not being able to safely demonstrate the ability to lift more than 55 pounds above the waist level." The physician who operated on Darby's elbow issued similar permanent restrictions, noting: "maximum lifting: 50 lbs. Restricted to 25 lbs with frequent lifting or carrying using both hands." (D.N. 50-1, PageID # 316-17)

At the end of 2010, Darby retained an attorney to assist him with pursuing a workers' compensation claim. On December 20, 2010, Darby's attorney sent a letter to GFS advising GFS that Darby had retained an attorney and stating that any communication regarding the workers' compensation suit must go through Darby's attorney. (D.N. 54, PageID # 509)

Shortly thereafter, GFS management met and discussed Darby's medical restrictions and his job as fleet mechanic. At this meeting, GFS decided to terminate Darby, but GFS did not communicate this decision to Darby until approximately April 25, 2011. Darby filed a formal workers' compensation claim with the Kentucky Department of Workers' Claims on May 16, 2011. At a later workers' compensation proceeding, an Administrative Law Judge found that Darby did not have the capacity to perform the role of fleet mechanic and determined an amount to be awarded to Darby for his permanent partial disability. (D.N. 50-1, PageID # 317-18, 322)

Darby instigated the present action in the Circuit Court for Bullitt County, Kentucky in October 2011. In November 2011, GFS removed the matter to this Court. Darby's complaint

asserts three claims. Count I alleges workers' compensation retaliation. Darby asserts that his termination was motivated by his filing and pursuing a workers' compensation claim. In response, GFS asserts that it terminated Darby because GFS did not have any positions available that Darby could perform with his restrictions and because no accommodations that would enable Darby to remain employed were available. Count II alleges disability discrimination. Darby claims that he has a disability under the Kentucky Civil Rights Act ("KCRA"), that he can perform the essential functions of a fleet mechanic with or without reasonable accommodation, that he was terminated because of his disability, and that GFS failed to accommodate his disability. GFS asserts that Darby does not have a disability under the KCRA because he is limited only from performing heavy work and that he never identified a position that he could perform with or without reasonable accommodation. Finally, Count III alleges that Darby was terminated in violation of an implied covenant of reasonableness and fair dealing. GFS argues that because Darby was an at-will employee, he cannot claim a breach of the covenant of good faith and fair dealing. (D.N. 1-1, PageID # 8-10; D.N. 50, PageID # 304-05)

## II. STANDARD

To grant a motion for summary judgment, this Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying the basis for its motion and the parts of the record that demonstrate an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies this burden, the non-moving party must show specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must show specific facts demonstrating that a genuine issue of fact exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). The non-moving party must establish a genuine issue of material fact with respect to each element of each of his claims. *Celotex*, 477 U.S. at 322-23. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient. Instead, there must be evidence upon which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

#### A. Workers' Compensation Retaliation Claim

The Kentucky workers' compensation statute states that "[n]o employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful claim" under the statute. Ky. Rev. Stat. § 342.197(1). An employee qualifies for the protections enumerated in this statute if he has given notice of his injury to the employer and has received some disability benefits, even if he has not filed a formal claim. *Overnite Transp. Co. v. Gaddis*, 793 S.W.2d 129, 130-31 (Ky. Ct. App. 1990). Kentucky courts use a modified form of the *McDonnell Douglas* burden-shifting scheme to analyze retaliation claims. *Ky. Ctr. for the Arts v. Handley*, 827 S.W.2d 697, 701 (Ky. Ct. App. 1991) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1993)). To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant knew that the

4

plaintiff had done so; (3) adverse employment action was taken; and (4) there was a causal connection between the protected activity and the adverse employment action. *Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910, 915 (Ky. Ct. App. 2006). Once a prima facie case has been established, the burden shifts to the employer to show a non-retaliatory reason for the adverse employment action. *Id.* at 916. The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were mere pretext for unlawful retaliation. *Id.*

While the parties agree that the first three elements of the prima facie test have been established in this case—Darby engaged in protected activity by pursuing a workers' compensation claim, GFS was aware of that activity, and Darby was discharged—the parties dispute the existence of the causation element. To satisfy the causation prong of the prima facie test, Darby need not demonstrate that the sole or primary reason for the termination was the protected activity, but only that his engagement in a protected activity was a "substantial and motivating factor" in GFS's decision to terminate. *Id.* (citing *First Prop. Mgmt. Corp. v. Zarebidaki*, 867 S.W.2d 185, 188-89 (Ky. 1993)).

One way a plaintiff can demonstrate a causal connection is by showing a close temporal proximity between a protected activity and an adverse employment action. *See Ky. Dep't of Corr. v. McCullough,* 123 S.W.3d 130, 135 (Ky. 2003). But when some time passes between when the employer learns of the protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causation. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008); *see also Dollar Gen.*, 214 S.W.3d at 916 (when lacking close temporal proximity, "[t]he logical approach is for the court to view the time between the two events in the context of the entire

5

circumstances"). Furthermore, because there is often a lack of direct evidence, demonstrating a causal connection can be difficult and therefore requires reliance on inference. *Vaughan v. Berry Plastics Corp.*, No. 1:11CV-00082, 2013 WL 230825, at *5 (W.D. Ky. Jan. 22, 2013).

A sufficient inference of causation can be made here by coupling temporal proximity with other evidence of retaliatory conduct. For example, while nearly a year lapsed between the time when Darby informed GFS of his injury on January 4, 2010 and the time GFS decided to terminate him in late December 2010, the decision to terminate was made within mere days of GFS learning, around December 20, 2010, that Darby had hired an attorney to prosecute the claim. Relatedly, Darby's hiring of an attorney constituted a new and significant step forward in the pursuit of his claim that may have irritated GFS. *See Overnite Transp. Co.*, 793 S.W.2d at 131-32. The advent of an attorney created the possibility that the suit would be prolonged, that GFS would face increased burden and expense, and that the matter would attract additional attention. These are factors that could conceivably lead a displeased employer to terminate an employee.

Darby has also offered facts sufficient to demonstrate that GFS management likely preferred a resolution of the workers' compensation matter that included Darby's discharge. In deposition testimony, GFS's human resources director Keith Masoud indicated that GFS management was "thinking that there would be a settlement that would involve a resignation" and that the settlement of the workers' compensation claim would not involve a decision regarding whether Darby would return to work at GFS. (D.N. 54, PageID # 514)

Darby presented other facts suggesting that GFS management became upset upon learning that he had hired an attorney. For instance, on December 27, 2010, in a telephone conversation with Masoud, Darby asked what work might be available for him at GFS. Masoud,

6

after realizing Darby had hired an attorney, replied, "oh, did you hire a lawyer for your—the Workmens' Comp?" After Darby answered in the affirmative, Masoud ended the conversation by stating, "well, we're through talking at this point."[1] (D.N. 54, PageID # 515)

On the same day as this conversation with Masoud, GFS management arranged for the meeting at which GFS decided to terminate Darby. (D.N. 54, PageID # 515) Thus, while an eleven-month lapse, by itself, might not support an inference of a causal link between Darby's initial pursuit of a workers' compensation claim and his eventual termination, when the Court considers the foregoing factors in tandem, and in a light favorable to the Plaintiff, it finds that Darby has raised a sufficient inference of causality to survive GFS's motion for summary judgment.

After the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce a legitimate and non-retaliatory reason for terminating the plaintiff. *Dollar Gen.*, 214 S.W.3d at 916. GFS learned of Darby's permanent restrictions on December 15 and December 23, 2010. GFS maintains that it terminated Darby because, based on his permanent medical restrictions, Darby was unable to perform the duties of a fleet mechanic and GFS was unable to otherwise accommodate him.

Once the defendant provides a non-retaliatory reason for termination, the burden shifts back to the plaintiff to show that the proffered reason was mere pretext for retaliation. *Id.* While GFS has offered an arguably non-retaliatory reason for its termination of Darby, an "employer is not free from liability simply because [it] offers proof [it] would have discharged the employee

---

[1] The Court recognizes that Darby's attorney told GFS not to speak with Darby about the workers' compensation matter and that Masoud may have been following those instructions. However, for purposes of summary judgment, the Court must view the facts in a light most favorable to Darby and finds that Masoud's statements could be interpreted as a sign of annoyance.

7

anyway, even absent the lawfully impermissible reason, so long as the jury believes the impermissible reason did in fact contribute to the discharge as one of the substantial motivating factors." *First Prop. Mgmt.,* 867 S.W.2d at 188; *see also Bullard v. Alcan Aluminum Corp.,* 113 F. App'x 684, 690 (6th Cir. 2004). In other words, an employer may be liable for retaliatory discharge if a factfinder concludes that the employee's pursuit of a workers' compensation claim was one of the substantial factors motivating the discharge decision, notwithstanding proof that the employee would have been lawfully discharged anyway. While GFS management may have been contemplating Darby's termination based on his medical restrictions, Darby has presented evidence from which a jury could conclude that his pursuit of a workers' compensation claim substantially motivated GFS's decision to terminate. As outlined above, there is evidence demonstrating GFS's displeasure at Darby's retention of an attorney and its desire for an end to the claim that included Darby's separation from the company. Although GFS claims that Darby was terminated because he could no longer perform the requisite job functions, Darby has articulated sufficient facts to the contrary to create a genuine dispute as to whether GFS's proffered basis for termination was pretextual.

For these reasons, the Court concludes that there is a genuine dispute of material fact as to whether GFS's termination of Darby was substantially motivated by his pursuit of a workers' compensation claim.

### B. Disability Discrimination Claim

An individual pursuing a disability discrimination claim can proceed under two separate legal theories: disparate treatment and failure to accommodate. *Webb v. Humana Inc.*, 819 F. Supp. 2d 641, 645 (W.D. Ky. 2011). The two theories have some overlapping elements and may

be asserted in the alternative as Darby has done here. *Id.* Accordingly, the Court has separately considered each of these theories.

### 1. Disparate Treatment

Pursuant to Kentucky statute, it is unlawful for an employer to discharge or otherwise discriminate against an individual because the person is a "qualified individual with a disability." Ky. Rev. Stat. § 344.040(1). To establish a prima facie case of disability discrimination under the Kentucky Civil Rights Act, a plaintiff must demonstrate "(1) that he had a disability as that term is used under the statute; (2) that he was 'otherwise qualified' to perform the requirements of the job, with or without reasonable accommodation; and (3) that he suffered an adverse employment decision because of the disability." *Green v. Woodhaven Country Club, Inc.*, No. 3:13-CV-00318, 2013 WL 6800638, at *2 (W.D. Ky. Dec. 20, 2013) (citing *Hallahan v. The Courier–Journal*, 138 S.W.3d 699, 706-07 (Ky. Ct. App. 2004)). Because the KCRA was modeled after federal law, Kentucky courts look to federal disability-discrimination precedent when interpreting the statute. *See, e.g.*, *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003); *Cunningham v. Humana Ins. Co.*, No. 3:10-CV-56, 2011 WL 4054689, at *1 n.1 (W.D. Ky. Sept. 12, 2011) (noting that claims arising under the KCRA are analyzed consistently with the Americans with Disabilities Act ("ADA")).[2]

The first and second prongs of the prima facie test are the primary elements in dispute in this matter and are discussed in the following sections. Regarding the third prong, GFS states that Darby was terminated based on his lifting restrictions and his resulting inability to perform

---

[2] Congress amended the ADA in 2008. ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2009). The ADA Amendments Act ("ADAAA") expanded the definition of disability. However, because the KCRA has not been amended to conform with the ADAAA, courts continue to interpret the KCRA consistently with pre-amendment ADA law. *E.g.*, *Breen v. Infiltrator Sys.*, 417 F. App'x 483, 486 (6th Cir. 2011); *Brown v. Humana Ins. Co.*, 942 F. Supp. 2d 723, 731 (W.D. Ky. 2013).

as a fleet mechanic. (D.N. 50-1, PageID # 318) This would constitute an adverse employment action based on a disability if Darby's condition is considered a disability. As discussed below, the Court finds that there is a question of fact related to whether Darby's limited ability to work constitutes a disability. Therefore, the Court concludes there is at least a fact question related to whether Darby was terminated because of a disability.

### a. Whether Darby Is Disabled

The threshold question is whether Darby is a person with a disability. The KCRA defines "disability" as "(a) [a] physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual; (b) [a] record of such an impairment; or (c) [b]eing regarded as having such an impairment." Ky. Rev. Stat. § 344.010(4). An impairment substantially limits an individual if it renders him "(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity." *Kiphart v. Saturn Corp.*, 251 F.3d 573, 582 (6th Cir. 2001) (citing 29 C.F.R. § 1630.2(j)(1) (2000)).[3] Major life activities include "those basic activities that the average person in the general population can perform with little or no difficulty," such as walking, seeing, hearing, lifting, caring for oneself, and working, among others. *Id.* (citation omitted).[4]

---

[3] The ADA empowers the Equal Employment Opportunity Commission ("EEOC") to promulgate regulations that will further define the scope and reach of the Act. Because Kentucky courts have interpreted the KCRA consistently with federal courts' interpretation of the ADA, this Court, like others, finds the EEOC regulations instructive. *See, e.g.*, *Hallahan*, 138 S.W.3d at 709.

[4] The arguments presented to the Court indicate that the parties do not dispute that working is a major life activity. Because courts are often less likely to find that an impairment substantially limits the major life activity of lifting, *see generally* Kristine Cordier Karnezis, Annotation, *What Constitutes Substantial Limitation on Major Life Activity for Purposes of Americans with Disabilities Act*, 23 A.L.R. Fed. 2d 197 (2007), and because the Court finds that there is a fact

At issue is whether Darby's lifting impairment substantially limits him in a major life activity.[5] Determining whether an impairment substantially limits a person in a major life activity ultimately requires "an individualized, fact-specific inquiry into the effect of an impairment on a plaintiff's life." *Kiphart*, 251 F.3d at 582. *Compare McKay v. Toyota Motor Mfg., U.S.A.*, 110 F.3d 369, 371-73 (6th Cir. 1997) (finding that plaintiff's ten-pound lifting restriction did not render her disabled because she was in the process of completing her teaching certification and, by reason of her age and education, was qualified to perform a wide variety of jobs that did not involve lifting), *with Burns v. Coca-Cola Enters.*, 222 F.3d 247, 253-55 (6th Cir. 2000) (finding a plaintiff with a 23-pound lifting restriction to be disabled because he was limited, based on his age, education, and experience, to performing jobs that involved medium to heavy lifting and other forms of manual labor).

Because the determination of whether a person has a disability under the ADA is an individualized inquiry, a physical condition that would not substantially limit one person's work ability may substantially limit a different person's work ability, depending on each person's occupation and range of qualifications. *Burns*, 222 F.3d at 253. Moreover, with respect to an individual's ability to work, "[t]he term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes" rather than an individual's ability to perform a particular job. *Id.* at 252 (citing 29 C.F.R. § 1630.2(j)(3)(i) (1997)). The EEOC illustrates this point by observing that "an individual who has a back condition that prevents the individual from performing any heavy labor job would be

---

question related to whether Darby's impairment substantially limits the major life activity of working, *see infra*, the Court will focus its analysis on the latter activity of working.

[5] Generally, the issues of whether the plaintiff has an impairment and whether the impairment affects a major life activity are considered legal questions while the determination of whether the impairment substantially limits a major life activity is usually an issue of fact for the jury. *Hallahan,* 138 S.W.3d at 707.

11

substantially limited in the major life activity of working because the individual's impairment eliminates . . . her ability to perform a class of jobs. This would be so even if the individual were able to perform jobs in another class, e.g., the class of semi-skilled jobs." *Henderson v. Ardco, Inc.*, 247 F.3d 645, 652 (6th Cir. 2001) (citing 29 C.F.R. § 1630, app. at 353-54).

It is conceivable that a finder of fact, analyzing Darby's individualized lifting and carrying restrictions, would find that his impairments substantially limit a major life activity by preventing him from performing an entire class of heavy labor jobs. Based on the facts presented regarding Darby's age, experience, and prior work history, he may be significantly limited in the amount and type of employment he would be able to find, particularly when compared to the average person with comparable qualifications. Darby worked as a heavy truck fleet mechanic for GFS for roughly four years. (D.N. 50-1, PageID # 315) Prior to that, he owned a farm and worked as a mechanic for several years. (D.N. 1-1, PageID # 8) Based on the record facts, it is reasonable to assume that Darby's skills, experience, and expertise limit his vocational choices. As the Sixth Circuit has noted, a lifting restriction substantially limits an individual in working if it forecloses a majority of employment options available to a person of limited education and skill. *See Burns*, 222 F.3d at 253-56.

When determining whether an individual is substantially limited in a major life activity, courts will further consider the nature and severity of the impairment, the duration of the impairment, and the permanent or long-term impact of the impairment. *Howard Baer*, 127 S.W.3d at 593. Here, taken in a light favorable to Darby, there is sufficient evidence regarding the severity of his impairment. Darby is limited to lifting no more than 50 pounds and carrying no more than 25 pounds—conceivably a significant impairment for an individual whose career revolves around heavy manual labor of the type Darby has long performed. Darby has also

presented evidence that the nature of these lifting limitations has restricted the manner in which he is able to execute certain manual tasks and the duration for which he is able to work. (D.N. 54, PageID # 522) Additionally, Darby has presented facts indicating that these impairments are permanent, thereby restricting his ability to perform indefinitely. This factor typically weighs against plaintiffs only when their impairments are temporary, unlike in Darby's case. *See, e.g.*, *Hack v. C-Plant Fed. Credit Union*, No. 5:08-CV-00111, 2010 WL 2228276, at *7 (W.D. Ky. June 2, 2010).

Thus, a jury evaluating the facts in a light most favorable to Darby could reasonably determine that, based on his skills and experience, and his specific lifting and carrying restrictions, Darby was substantially limited in a major life activity.

### b. **Whether Darby Is Otherwise Qualified**

In addition to showing that he is disabled within the meaning of the statute, Darby must establish that he is a "qualified individual" with a disability by showing "(1) that he satisfies the prerequisites for the position he holds or desires, such as possessing the appropriate educational background, employment experience, and skills; and (2) that he can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Burns*, 222 F.3d at 256 (citation and alterations omitted). When accommodation is necessary to enable a plaintiff to perform the essential functions of a position, the burden is on the plaintiff to propose an accommodation that is "objectively reasonable." *Keith v. Cnty. of Oakland*, 703 F.3d 918, 927 (6th Cir. 2013). In defining what is reasonable, the Sixth Circuit has noted that an employee must show that the accommodation is both efficacious and proportional to costs. *Id.* The employer then bears the burden of proving that the proposed reasonable accommodation would impose undue hardship. *Id.*

GFS believes that Darby should be bound by the Administrative Law Judge's finding that Darby was not able to perform the duties of the fleet mechanic position, and that Darby should be barred from making claims contrary to those he made to the Social Security Administration ("SSA") and the Kentucky Department of Workers Claims in his application for disability benefits. (D.N. 50-1, PageID # 329-31) However, these estoppel theories will not apply if the prior proceedings did not give consideration to Darby's ability to work with reasonable accommodation. *See Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 380 (6th Cir. 1998). In the context of a Social Security disability application, the question of whether an applicant could have worked with a reasonable accommodation is not asked. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999) (noting that when the SSA determines whether an individual is disabled, it does not take the possibility of "reasonable accommodation" into account, nor must applicants refer to the possibility of reasonable accommodation when applying for such benefits); *Griffith*, 135 F.3d at 382. Regarding the workers' compensation proceeding, GFS has not provided sufficient evidence to demonstrate that the issue of accommodation was addressed there. Thus, there remains at least a factual question regarding whether the issue of accommodation was adequately addressed and incorporated at the proceedings that preceded the instant matter.

That Darby possesses the appropriate background and employment experience to work as a mechanic is not in dispute. Darby served in the position of fleet mechanic for approximately four years prior to his injury and his performance was satisfactory. (D.N. 54, PageID # 509) At issue is whether Darby can perform the essential functions of the position with reasonable accommodation of his lifting restrictions. The determinations of whether a given function is "essential" and whether a particular accommodation is reasonable are customarily considered

questions of fact. *Brickers v. Cleveland Bd. of Educ.*, 145 F.3d 846, 849 (6th Cir. 1998); *Keith*, 703 F.3d at 927. Assuming that lifting, carrying, and moving heavy objects are essential functions of the fleet mechanic position, Darby has presented evidence demonstrating that he could effectively complete these functions with specific accommodations. (D.N. 54, PageID # 535-41)[6] For instance, in relation to the task of mounting and removing large tires, Darby's proposed accommodation would prevent him from carrying and lifting the tires by hand. He contends that he could use tools—including a hand lever and a tire dolly—to raise tires to the correct position and to get them on the wheel, and could move tires by rolling them. (D.N. 54, PageID # 535) To accommodate the task of moving 80-pound bulkheads from the trailer to the shop, Darby proposes using a forklift or a hand truck dolly. (D.N. 54, PageID # 537) To move and place other large and unwieldy objects, Darby indicates that he could use a cherry picker device. (D.N. 54, PageID # 539-40)[7]

While Darby has proposed an expansive set of accommodations that appear to be reasonable, GFS has not sufficiently articulated how these accommodations would cause it undue hardship and thus has not fulfilled its burden of demonstrating an absence of any genuine issue of material fact. In light of the evidence, the Court finds that a question of fact remains

---

[6] An open factual question remains regarding the essential lifting requirement of the fleet mechanic position. A job posting for a fleet mechanic, posted in April 2011, stated that the job required the ability to lift only 25 pounds. (D.N. 50-1, PageID # 322) Darby points to this posting as evidence that the lifting requirements relied on by GFS were invalid. (D.N. 54, PageID # 542-43) GFS claims that it inadvertently posted the 25-pound lifting requirement. (D.N. 50-1, PageID # 322-23) GFS further points out that Darby acknowledged that the posting was inaccurate since he testified that he lifted items in excess of 50 pounds while serving as a fleet mechanic. (D.N. 50-1, PageID # 323)

[7] Consistent with federal disability law, the KCRA states that "reasonable accommodation" includes "job restructuring" and "acquisition or modification of equipment or devices." Ky. Rev. Stat. § 344.030(6).

regarding whether Darby is "otherwise qualified" and could perform the essential lifting and carrying functions of a fleet mechanic with reasonable accommodation.

### 2. Failure To Accommodate

To establish a claim of disability discrimination for failure to accommodate, Darby must demonstrate that "(1) [he] is disabled within the meaning of the Act; (2) [he] is otherwise qualified for the position, with or without reasonable accommodation; (3) [his] employer knew or had reason to know about [his] disability; (4) [he] requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Brown*, 942 F. Supp. 2d at 731 (citation omitted). Once the employee has established a prima facie case, the burden shifts to the employer to demonstrate that the employee cannot reasonably be accommodated because the accommodation would impose undue hardship. *Gaines v. Runyon*, 107 F.3d 1171, 1175-76 (6th Cir. 1997).

The Court has already examined the issue outlined in prong one, concluding that there is a question of fact as to whether Darby is disabled within the meaning of the KCRA. *See supra* Part III.B.1.a. The elements outlined in prongs three and five are not in dispute—GFS knew of Darby's purported disability and failed to provide him with any accommodation. To satisfy the remaining factors, Darby must be otherwise qualified for the position and must have requested a reasonable accommodation. *Brown*, 942 F. Supp. 2d at 732. Reassignment to a vacant position can qualify as a reasonable accommodation and an employer has a duty to consider transferring a disabled employee to a position for which that employee is qualified. *Cunningham*, 2011 WL 4054689, at *4. However, to recover on a failure-to-accommodate theory of discrimination, the plaintiff must show that he requested, and the defendant denied, such a transfer. *Id.*

Darby has noted various instances in which he proposed employment accommodations. For example, Darby provided evidence that, prior to his termination, he contacted GFS on numerous occasions to inquire about light duty employment opportunities while he recovered. Specifically, in his deposition, Darby indicated that he had asked GFS about a position involving the untangling of light cords and about another position filling in for a vacationing fleet clerk. (D.N. 54, PageID # 526) Darby provided evidence that other fleet shop employees, presumably with qualifications similar to his own, had been allowed to return to work and had been placed in similar positions. Additionally, the work would have entailed tasks similar to those Darby had previously been responsible for while in the lead mechanic position. (D.N. 54, PageID # 526) While GFS denied these accommodation requests, it has not provided evidence that the requests were unreasonable or disproportionately costly.

As part of Darby's claim that GFS failed to reasonably accommodate his disability, he asserts that GFS failed to engage in an interactive process with him to identify reasonable accommodations. In order "[t]o determine the appropriate reasonable accommodation it may be necessary for [the employer] to initiate an informal, interactive process with the [employee]." *Kleiber*, 485 F.3d at 871 (citing 29 C.F.R. § 1630.2(o)(3)). "The purpose of this process is to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.* (citation omitted). According to the Sixth Circuit, "[e]ven though the interactive process is not described in the statute's text, the interactive process is mandatory, and both parties have a duty to participate in good faith." *Id.* "When a party obstructs the process or otherwise fails to participate in good faith, courts should attempt to isolate the cause of the breakdown and then assign responsibility." *Id.* (citation omitted); *see also Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1116 (9th Cir. 2000) (en banc),

17

*vacated on other grounds*, 535 U.S. 391 (2002) (finding that an employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in the interactive process in good faith).

While Darby does not appear to have requested any specific accommodations relating to the position of fleet mechanic prior to his termination, it is possible that a discussion of such accommodations would have arisen during the interactive process. Darby contends that GFS failed to engage with him regarding potential accommodations or to give him a fair opportunity to respond to the concerns surrounding his employment. Indeed, the record reflects no evidence that GFS attempted to engage in any dialogue with Darby regarding any proposed accommodations prior to his termination. It is possible that, had GFS and Darby participated in the interactive process, Darby would have demonstrated that he was able to perform the essential functions of the fleet mechanic position with reasonable accommodations. Absent a disruption in the interactive process, the parties might have successfully discovered a set of job modifications that would have allowed Darby to return to work as a fleet mechanic.

From the evidence presented, a jury could reasonably find that GFS did not attempt to entertain Darby's requested accommodations. Likewise, a factfinder could reasonably conclude that GFS failed to engage in the interactive process in good faith, thereby preventing the parties from discovering and implementing accommodations that might have allowed Darby to return to the fleet mechanic position.

### C. Employment Contract Claim

It is unclear whether Darby's contract claim, as set forth in Count III of the Complaint, stems from a theory of breach of a covenant of good faith and fair dealing, or promissory estoppel. Regardless, the Plaintiff does not oppose dismissal of the contract claim and both

18

theories fail as a matter of law. Pursuant to Rule 56(e), the Court will only briefly address these issues.

When an individual is employed at-will, there is no covenant of good faith and fair dealing. *See McCart v. Brown-Forman Corp.*, 713 F. Supp. 981, 982-83 (W.D. Ky. 1988); *Wyant v. SCM Corp.*, 692 S.W.2d 814, 816 (Ky. Ct. App. 1985). Because Darby's employment was indisputably at-will (D.N. 50-1, PageID # 337), GFS did not breach any covenant of good faith and fair dealing when it terminated Darby's employment.

To establish a promissory estoppel claim, a plaintiff must show that the promisor made a promise that the promisor should reasonably have expected to induce action or forbearance on the part of the plaintiff and that the promise did in fact induce such action or forbearance. *Sawyer v. Mills*, 295 S.W.3d 79, 89 (Ky. 2009). In this case, the undisputed facts show that the only promise that was made to Darby was a promise of at-will employment so Darby cannot show the necessary elements of "promise" and "reliance" to establish a promissory estoppel claim.

For the abovementioned reasons, the Court finds that Plaintiff's contract claim fails as a matter of law and will grant summary judgment on this issue.

## IV. CONCLUSION

For the foregoing reasons, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Defendant Gordon Food Services, Inc.'s motion for summary judgment (D.N. 50) is DENIED as to Plaintiff Ronald Darby's workers' compensation retaliation claim, and his disability discrimination and failure to accommodate claim. The motion for summary judgment is GRANTED as to the employment contract claim.